IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

SHIRLEY HALL and VADA SMITH,
INDIVIDUALLY AND AS
ADMINISTRATRIX OF THE ESTATE
OF ROBERT HALL, DECEASED                                         PLAINTIFFS

VS.                              CASE NO. 06-CV-1012

UNION PACIFIC RAILROAD COMPANY                                   DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed on behalf of the Defendant Union Pacific Railroad Company. (Doc. No. 8). The Plaintiffs have filed a response. (Doc. No. 15). Defendant has filed a reply to Plaintiffs' response. (Doc. No. 25). Also before the Court is a Motion for Partial Summary Judgment filed on behalf of the Plaintiffs. (Doc. No. 14). Defendant has filed a response to the motion. (Doc. No. 23). Plaintiffs have filed a reply. (Doc. No. 26). The Court finds the matter ripe for consideration.

### BACKGROUND

On May 23, 2003, Union Pacific crew members Mike Chambless, Tim Jones and David Huff brought a train from Camden, Arkansas to El Dorado, Arkansas. They arrived in the El Dorado yard around 3:00 p.m. Jones, the conductor, went inside the depot to prepare the paperwork for an outbound train while Chambless, the engineer, and Huff, the brakeman, uncoupled the locomotives from the cars they had brought from Camden. Chambless and Huff then took the locomotive approximately one mile south of the depot to pick up a cut of 39 cars

that were sitting on the tracks just east of the Hawthorne Street crossing stretching back toward the Highway 82B/Junction City Road trestle.  They coupled the locomotives to the cut of cars and moved them forward over the Hawthorne Street crossing.  After the cars passed over the Hawthorne Street crossing, Huff placed the end of train device (EOT) on the last car.  At this point, the train was stopped and a brake test was performed.  During the brake test, Huff walked toward the front of the train inspecting the cars for problems.   After performing the airbrake test, Chambless and Huff took the train back to the depot and waited for a van to take them back to Camden.

     Robert Hall was discovered lying beside the tracks approximately 300 feet west of the Highway 82B/Junction City Road trestle by a school-aged child .  Apparently, he had been injured by the train.  The police and EMT were called to the scene.  When the EMT arrived, Hall was found  lying between the rails with his left leg over the north bound rail.  He had sustained a deep laceration close to his groin area on his left leg.  Hall was taken to the hospital where his left leg was amputated near the hip.

     On June 6, 2003, Hall executed a power of attorney appointing Shirley Hall, his mother, and Vada Smith, his sister, as his Attorney-in-Fact "Agents".  On the same day,  Hall entered into a contract for legal representation with his brother-in-law, Attorney Brian Smith.  Shirley Hall and Vada Smith also signed the attorney-client contract as Hall's power of attorney.  Under the contract, Attorney Smith had the authority to file suit, employ counsel at no additional cost to Hall and, with Hall's consent, settle any claims.  The contract also stated that Hall's legal representatives, heirs and successors were bound to the terms of the contract.  Sometime after executing the attorney-client contract,  Hall's attorney, Brian Smith, associated Attorney Mark

Dupont to help negotiate a settlement of Hall's claims against the railroad.

On February 25, 2005, Hall executed his Last Will and Testament. Under the will, Shirley Hall and Vada Smith were appointed Co-Executrix of Hall's estate. The will also stated that as Co-Executrix Hall and Smith could act without prior Court authorization or subsequent Court confirmation with respect to carrying out the wishes of the will. On April 25, 2005, Hall died of pancreatic cancer and cardiac arrhythmia.

Meanwhile, unaware of Hall's death, Dupont continued to try and settle Hall's claims against the railroad. On May 2, 2005, Scott Gunter, Union Pacific's claim manager, offered to settle Hall's claims for $250,000. Dupont accepted the offer on Hall's behalf, sending Gunter a letter confirming the settlement.

Thereafter, Gunter learned that Hall had died on April 25, 2005, seven days before he made the settlement offer to Dupont. On June 14, 2005, Gunter informed Dupont that the railroad was withdrawing its settlement offer.

On January 23, 2006, the Plaintiffs, Shirley Hall and Vada Smith, filed this action against Union Pacific on behalf of themselves and Hall's estate. They allege that Union Pacific breached its settlement agreement with Hall and, in the alternative, that Union Pacific was negligent in causing the accident on May 23, 2003. The matter is now before the Court on cross Motions for Summary Judgment. Union Pacific seeks summary judgment against the Plaintiffs on their breach of contract claim and their negligence claim. Plaintiffs seek partial summary judgment on their breach of contract claim. On February 2, 2007, the Court heard arguments on the the parties' cross motions.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment;

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must then demonstrate the existence of specific facts in the record that create a

genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

DISCUSSION

*Plaintiff's Breach of Contract Claim*

The Plaintiffs contend that Union Pacific breached the settlement agreement in question when it rescinded its settlement offer on June 14, 2005. Union Pacific contends that no valid settlement agreement existed because Attorney Dupont did not have the authority or power to accept Union Pacific's settlement offer after Robert Hall's death.

Robert Hall died on April 25, 2005. It is a settled rule of agency law that the death of the principal terminates the authority of the agent. *See Arkansas Board of Embalmers and Funeral Directors v. Reddick,* 366 Ark. 89, ___ S.W.3d ___ (2006); Restatement (Second) of Agency § 120 (1958). Therefore, upon Robert Hall's death, the authority to act on his behalf granted to his mother and sister by the June 6, 2003, power-of-attorney ended. This rule also applies to an attorney-client relationship. An attorney-client relationship ends on the death of the client. *See* Restatement (Third) of the Law Governing Lawyers § 31 (2000). Therefore, upon Robert Hall's death, the attorney-client relationship between Hall and Attorneys Smith and Depont ended. Attorney Dupont did not have the authority to accept a settlement offer from Union Pacific after April 25, 2005, the date of Robert Hall's death. On May 2, 2005, when Union Pacific offered to settle Hall's claims for $250,000, Robert Hall was dead. Neither his agents under his power of attorney nor his attorney could accept the settlement offer on his behalf because their authority

ended at the time of his death.

      Plaintiffs argue that a valid settlement agreement existed because Attorney Dupont had the authority to accept Union Pacific's offer despite Robert Hall's death. They claim that the death of the client does not terminate the attorney-client relationship or revoke the attorney's authority where the contract contains a provision specifically granting the authority to carry out the litigation to judgment or where the client does not retain control and direction of the litigation. However, these exceptions to the rule have not been recognized in Arkansas. Therefore, Robert Hall's death ended his attorney-client relationship with Attorneys Smith and Dupont. Dupont did not have the authority to accept Union Pacific's offer on Hall's behalf.

      Plaintiffs argue that a valid settlement agreement existed because Dupont could accept the railroad's offer on their behalf because they signed the contract for legal representation with Attorney Brian Smith. However, even though Shirley Hall and Vada Smith signed the contract, they signed it as Robert Hall's agents. It was signed under the authority given them under Hall's June 6, 2003, power of attorney. They were acting as Robert Hall's agents and were signing on his behalf, not theirs. Shirley Hall and Vada Smith are not principal signatories to the contract for legal representation. An attorney-client relationship did not exist between the plaintiffs, Shirley Hall and Vada Smith, and Attorney Brian Smith or Mark Dupont. Therefore, Attorney Dupont could not accept Union Pacific's settlement offer on their behalf.

      Plaintiffs also argue that a valid settlement agreement exists because they are the legatees and Co-Executrix under Hall's Last Will and Testament. They claim that as such they could accept Union Pacific's settlement offer on behalf of Robert Hall's estate. However, Union Pacific did not make a settlement offer to Hall's estate. The offer was made to Robert Hall.

Therefore, Shirley Hall and Vada Smith could not have accepted an offer that was not extended to them as legatees or Co-Executrix of Hall's estate.

On May 2, 2005, Union Pacific offered Robert Hall $250,000 to settle his claims against the railroad. At the time of the offer, Robert Hall was dead and there was no one to accept the settlement offer. There was never a valid settlement agreement between Union Pacific and Robert Hall. Therefore, Plaintiffs' claim for breach of contract must fail as a matter of law.

### *Plaintiffs' Negligence Claim*

Plaintiffs claim that Union Pacific was negligent in causing the accident on May 23, 2003. They contend that Robert Hall was a licensee by implication and, thus, the railroad owed him a higher duty of care to see that he was not injured while on their property. The railroad contends that Hall was an undiscovered trespasser to whom it owed no duty at law. Therefore, Hall's status as a trespasser or a licensee is directly before the Court.

The Arkansas law of premises liability is clear. A trespasser is one who comes upon land without the consent of the possessor. *Coleman v. United Fence Co.,* 282 Ark. 344, 345, 668 S.W.2d 536, 537 (1984). A licensee is someone who is on the premises of a landowner under an express or implied invitation, for one's own purpose and not for the mutual benefit of oneself and the owner. *Bader v. Lawson,* 320 Ark. 561, 564, 898 S.W.2d 40, 42 (1995). The distinction drawn by Arkansas case law between trespassers and licensees seems to be the landowner's consent to the presence of the licensee or, put another way, the landowner's express or implied invitation to the licensee to be on the premises. This distinction is consistent with Ark. Code Ann. § 18-60-108(c), which defines a trespasser to mean a person who enters the property of another without permission and without an invitation, express or implied.

The duty owed to a trespasser is embodied in Ark. Code Ann. §18-60-108. Under the statute, no duty is owed to an undiscovered trespasser, but once the trespasser's presence is known, the landowner owes the trespasser only a duty not to cause him injury by wilful or wanton conduct. *Id.* The duties owed to a licensee by a landowner are similar to those owed to a trespasser, but the differences, although few, are significant. Landowners owe licensees no duty until their presence is known or until the landowner reasonably should have know of their presence. Once the landowner knows of the licensee's presence or reasonably should have known of it, the landowner owes the licensee a duty not to cause injury by wilful or wanton conduct. *Heigle v. Miller,* 332 Ark. 315, 321, 965 S.W.2d 116, 120 (1998)(citing *Bader,* 320 Ark. 561, 898 S.W.2d 40).

Here, Plaintiffs argue that Hall was a licensee by implied invitation. They contend that the existence of a well-worn path beside Union Pacific's tracks was an implied invitation to Robert Hall to come onto the railroad's property. However, under Arkansas law, an implied invitation requires some affirmative act on the part of the landowner to induce the person on to its property. *See Aluminum Co. of America v. Guthrie,* 303 Ark. 177, 793 S.W.2d 785 (1990). Here, there was no affirmative act on the part of the railroad. Union Pacific did not construct or maintain the path, nor did it build steps up to the path for the public's use. *See Missouri Pacific Railroad Co. v. English,* 187 Ark. 557, 61 S.W.2d 455 (1933); *St. Louis Iron Mountain & Southern Railway Co. v. Dooley,* 77 Ark. 561, 92 S.W.2d 789 (1959). The railroad did nothing to compel or induce the public or Robert Hall to use the path. There was no implied invitation to come on to the railroad's property. Therefore, Hall was not a licensee. He was a trespasser.

There is no evidence that the railroad knew that Hall was on its property, let alone lying

beneath the cut of cars stretching between the Hawthorn Street crossing and the Highway 82B/Junction City Road trestle. Hall was an undiscovered trespasser and, as such, the railroad owned him no duty of care. Therefore, Plaintiffs' claim for negligence must fail as a matter of law.

## CONCLUSION

Based upon the foregoing reasons, the Court finds that the Plaintiffs' Motion for Partial Summary Judgment on their breach of contract claim should be and hereby is **denied**. The Defendant's Motion for Summary Judgment on Plaintiffs' breach of contract claim and Plaintiffs' negligence claim should be and hereby is **granted.** A judgment of even date, consistent with this Opinion, will be issued.

IT IS SO ORDERED, this 1st day of March, 2007.

        /s/Harry F. Barnes
        Hon. Harry F. Barnes
        United States District Judge